## HAMLETT v. SIMMS.

APPEAL: *Final order in chancery.*
> An order in chancery overruling a motion for compulsory process against a commissioner of the court to compel him to pay money in his hands into court, is not a final order from which an appeal will lie.

APPEAL from *Chicot* Circuit Court.
Hon. MARK VALENTINE, Special Judge.

*U. M. & G. B. Rose* for appellant.

Whatever balance remained after paying the mortgage debt belonged to the mortgagers. (*2 Jones on Mort., sec. 1687.*) It was the Master's duty to collect the money and hold it subject to the order of the court. He had no right to execute a deed until he received the purchase money, and if he received anything but money, or took plaintiff's receipt, or any one else's, or otherwise failed in his duty, he became liable. *20 Ark., 661; 23 Ark., 41.*

The Master is the officer of the court. The proper order was made and served on him, and he refused to obey. It was the duty of the court to coerce him by attachment. *2 Dan. Chy. Pl. and Pr., Perkins' ed., 1047.*

*D. H. Reynolds* for appellee.

The order appealed from was not a *final order* from which an appeal would lie, and the cause should be dismissed.

A final decree having been entered at the previous term, the sale completed, reported and confirmed, no further orders could be made without setting aside the decree, which could not be done after the term passed.

EAKIN, J. This is an appeal from the action of the Chancellor below, in overruling a motion to take some proceedings to compel an officer of the court to pay in money in compliance with a previous order to that effect. The circumstances are as follows :

In a case of Richardson and May against Hamlett and others, a decree had been rendered foreclosing a mortgage, fixing the debt at $5,097.81, and directing a sale of the mortgaged property. Simms was appointed commissioner for the purpose. The sale was directed to be made on the thirteenth of March, 1880, one-half of the purchase money to be paid in cash and the other at eight months.

At the July term, 1880, Simms reported that he had sold the property for the sum of $5,450 to Dreyfus and Mayer, one-half of which, or $2,725, had been paid to the plaintiff's attorney, whose receipt was exhibited—the balance being due at eight months from the sale. Without action on the report, the cause was continued.

Afterwards, at the July term, 1881, the report was taken up, together with a deed which Simms had executed to the purchasers, and submitted for approval. Both were held to be regular and proper, and the acts of the commissioner, "in making said sale and in the execution and acknowledgment in open court of said deed, and in the deed itself," were confirmed, approved and ordered to be made of record. A sum, left blank in the record, was allowed the commissioner for his services.

At the same term the defendants in the suit, Hamlett &. Abells, applied to the court by motion, showing that there had been paid for the lands the sum of $216.36 in excess of the amount required to satisfy complainants and the costs under the decree, and asking a rule on the commissioner to pay that sum into court for their benefit.

The rule probably issued to show cause, and at the Jan-

uary term, 1882, Simms responded, saying that the first payment for the lands had been made in his presence to the attorney for complainants; and that when the deferred payment became due, and he was called on to make a deed, he was informed by complainant's counsel, and by the purchaser, that the payment had been made, in New Orleans, to the complainants themselves; saying, further, that no part of it had come to his hands. Upon hearing of the motion, response and argument, the commissioner was ordered to produce the money in court on the first day of the next regular term.

A year afterwards, at an adjourned session of the January term 1883, a special judge being on the bench, the defendants reported that the commissioner had not complied with the order, and that they had not received said sum of $216.36. They prayed the court to force compliance with the order "by such action and process as is usual and lawful in such cases." The motion was overruled at the costs of defendants. They excepted and appealed.

Except as to the trivial costs of the particular motion, the order of the court in overruling it determines nothing finally. These special costs are commonly allowed in disposing of interlocutory matters, and do not make orders of an interlocutory nature final, so as to be subjects of appeal. *Powell on Appellate Proceedings, secs. 28–30.*

Leaving that out of view, there is nothing in the order which finally disposes of the fund in court, or determines the right of any party to it. That remains under the control of the court now as before. The court has to some extent a discretion as to the time and mode of compelling its officers to bring in money for which they may be chargeable, and the effect of the order overruling the motion, was simply to say that the Chancellor was not pre-

pared just then, and did not think it advisable to devise some measure to compel the commissioner to perform the previous order. It did not prejudice the defendant's *right* to the fund, nor preclude another motion at another time. We must not presume that the Chancellor intends to allow officers of the court to appropriate money of suitors. As it stands now, there has been no adjudication as to the rights of these appellants at-all. The first order was not to pay *them* the sum of $216.36, but to pay it into court. How much of it will belong to them will depend upon a full estimate of costs and expenses, and the commissioner's fees, which are not yet determined. It might appear from aught that we can see, upon showing of the commissioner, or in response to a rule to show cause against an attachment, that the sum previously ordered to be paid in is too large. If it were too small, the appellants here might certainly, on show of mistake, or on subsequent developments, have an order for more; and, *per contra*, the court may, on proper showing, correct it for less. The whole thing is undetermined. The court below is still in the discharge of its own proper business yet unfinished, and if we were to concede that it seems to be tardy in this matter, we would not hasten it by an appeal.

If it should become apparent that the court persistently declines to act at all, there is no doubt of our power, on proper application, to set it in motion. It ought to proceed in reasonable time, get in all the fund, and determine what is properly due to the officers of the court and the parties to the suit. That goes without saying. But we can not allow an appeal from an interlocutory order to serve the purpose of a mandamus.

That this appeal is useless becomes apparent from considering its effect. If we were to entertain it and reverse the order overruling the motion, the case would go back

with the motion restored and pending. If we dismiss it, the appellants are not precluded from renewing the motion, which, by the way, should be more specific. The most usual and appropriate motion is for a rule to show cause why an attachment for contempt should not issue.

We think the appeal does not lie, and ought to be dismissed.

Rule accordingly.